UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SARA EAGER,

        Plaintiff,                             Case No.  1:13-CV-30

v.

                                       HON. GORDON J. QUIST

CREDIT BUREAU COLLECTION
SERVICES, INC., and VAN HATTUM
& ASSOCIATES, P.C.,

        Defendants.
_____/

MICHAEL WHITESIDE, et al.,

        Plaintiffs,                           Case No.  1:13-CV-84

v.

                                       HON. GORDON J. QUIST

CREDIT BUREAU COLLECTION
SERVICES, INC., and VAN HATTUM
& ASSOCIATES, P.C.,

        Defendants.
_____/

MARAJA WELCH,

        Plaintiff,                             Case No.  1:13-CV-173

v.

                                       HON. GORDON J. QUIST

CREDIT BUREAU COLLECTION
SERVICES, INC., and VAN HATTUM
& ASSOCIATES, P.C.,

        Defendants.
_____/

DAWN REPPER, et al.,

        Plaintiffs,                           Case No.  1:13-CV-261

v.

                                       HON. GORDON J. QUIST

CREDIT BUREAU COLLECTION
SERVICES, INC., and VAN HATTUM
& ASSOCIATES, P.C.,

        Defendants.
_____/

**OPINION**

**OPINION**

Plaintiffs in these consolidated putative class action cases have sued Defendants, Credit Bureau Collection Services, Inc. (CBCS) and Van Hattum & Associates, P.C. (VHA), alleging claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Michigan Occupational Code (MOC), M.C.L. § 339.101 *et seq.* The Court has previously dismissed certain claims and parties from these cases. (*See*, *e.g.*, Case No. 1:13-CV-30, dkt. # 88.)

Plaintiffs have filed a Motion to Certify Class in each case pursuant to Federal Rule of Civil Procedure 23. CBCS has responded to Plaintiffs' motions, and Plaintiffs have replied. VHA has not responded to the motions.

For the following reasons, the Court will deny Plaintiffs' motions.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that they owed consumer debts to various medical providers for personal medical care or services. Plaintiffs further allege that the medical providers retained CBCS—a debt collection agency—to collect the delinquent debts. CBCS subsequently forwarded the delinquent accounts to VHA—a law firm—to file collection actions. VHA, in consultation with CBCS, filed state-court collection actions solely on behalf of the medical providers, but included in each complaint debts owed to other medical providers. Each three-paragraph form complaint that VHA filed alleged that the plaintiff-medical provider had received an assignment of the claims from the other providers listed on an exhibit attached to the complaint. Plaintiffs allege that such allegation was false because none of the other medical providers had assigned their claims to the plaintiff-medical provider, and VHA and CBCS were aware of this when the state-court complaints were filed. Plaintiffs allege that these false allegations concerning nonexistent assignments violated the FDCPA and the MOC.

2

In Cases 1:13-CV-84 (Whiteside), 1:13-CV-173 (Welch), and 1:13-CV-261 (Repper), Plaintiffs also allege that the plaintiff-medical providers named in the state-court complaints were not the true creditors, but instead were nonexistent entities with names similar to those of the true creditors. For example, in Whiteside, Plaintiffs allege that the medical provider, Spectrum Health Hospitals, was identified as "Spectrum Health Hospital Facility," even though no such entity exists and Spectrum Health Hospitals has not registered that name as an assumed name with the State of Michigan. (Case No. 1:13-CV-84, dkt. # 25 at Page ID 170–71, ¶¶ 12–13.)

Plaintiffs filed their Complaints on January 10, 2013 (Case No. 1:13-CV-30 (Eager))[1], January 25, 2013 (Whiteside), February 15, 2013 (Welch), and March 8, 2013 (Repper), respectively, alleging claims under the FDCPA and the MOC against CBCS and the medical providers who served as the state-court plaintiffs in the respective cases (Provider Defendants). Subsequently, Plaintiffs filed Amended Complaints adding VHA as a Defendant and adding claims under the Michigan Collection Practices Act (MCPA), M.C.L. § 445.251 *et seq*. In their class allegations in their Amended Complaints, Plaintiffs requested that the Court certify a class and a subclass. With the exception of the start date, the class definition is the same in each case. The subclass definitions differ from case-to-case only with respect to the start date and the name of the provider-plaintiff in the state-court action. For example, the Eager Amended Complaint proposes the following class definition:

> Each and every natural person named as a defendant in a lawsuit filed on or after January 11, 2012 in any Michigan court, in which the complaint to initiate the lawsuit: (a) was filed by Van Hattum & Associates, P.C.; (b) with information provided by Credit Bureau Collection Services, Inc.; (c) on behalf of a single, named plaintiff; (d) in connection with efforts to collect delinquent medical debts; (e) allegedly owed by the defendant to the plaintiff and one or more additional creditors; and (f) which falsely stated that the plaintiff had taken assignment of the claims of the additional creditors named on an exhibit attached to the complaint.

---

[1] Unless otherwise noted, all references to docket numbers refer to entries in Case No. 1:13-CV-30.

3

(Dkt. # 25 at Page ID 266-67, ¶ 130.) The proposed subclass definition is:

> Each and every natural person named as a defendant in a lawsuit filed on or after January 11, 2012 in any Michigan court, in which the complaint to initiate the lawsuit: (a) was filed by Van Hattum & Associates, P.C.; (b) with information provided by Credit Bureau Collection Services, Inc.; (c) on behalf of Advantage Health/Saint Mary's Medical Group, also known as Advantage Health Physician Network, as the sole, named plaintiff; (d) in connection with efforts to collect delinquent medical debts; (e) allegedly owed by the defendant to Advantage Health/Saint Mary's Medical Group, also known as Advantage Health Physician Network, and one or more additional creditors; and (f) which falsely stated that the plaintiff had taken assignment of the claims of the additional creditors named on an exhibit attached to the complaint.

(*Id.* at Page ID 267, ¶ 131.)

CBCS and the Provider Defendants filed motions to dismiss the Amended Complaints on various grounds. On October 18, 2013, the Court issued a Memorandum Opinion and separate Orders granting the Provider Defendants' motions and dismissing them from the case. The Court also granted in part and denied in part CBCS's motions. (Dkt. # 55.) Among other things, the Court dismissed Plaintiffs' MCPA claims, concluded that certain Plaintiffs' claims were barred by the doctrines of res judicata and collateral estoppel, concluded that the Provider Defendants were neither debt collectors under the FDCPA nor collection agencies under the MOC, and concluded that Plaintiffs had stated claims against CBCS under the FDCPA and the MOC based on the false assignment allegations.[2]

## II. CLASS CERTIFICATION STANDARD

A district court has discretion to certify a class if:

(1)  the class is so numerous that joinder of members is impracticable;

(2)  there are questions of law or fact common to the class;

---

[2] VHA subsequently filed Motions to Dismiss, raising essentially the same arguments that CBCS raised in its motions. The Court granted VHA's motions in part, resulting in the complete dismissal of three separate cases, No. 1:13-CV-159 (Frazine), 1:13-CV-267 (Lovely), and 1:13-CV-341 (Williams).

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the class.

Fed. R. Civ. P. 23(a). In addition to the Rule 23(a) factors—numerosity, commonality, typicality, and adequacy—the proposed class must meet the requirements of one of the types of class actions described in Rule 23(b). *See Tseng v. Nordstrom, Inc.*, No. 2:11-cv-08471-CAS (MRWx), 2014 WL 174946, at *2 (C.D. Cal. Jan. 15, 2014). The party seeking certification bears the burden of demonstrating that all of the Rule 23 requirements are satisfied. *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). A district court may certify a class only if, "after a rigorous analysis," it is satisfied that the requirements of Rule 23 are met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982). A district court "should not pass judgment on the merits of the case at the class certification stage," *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010), although, if necessary, it may "probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (internal quotation marks and citation omitted).

### III. Discussion

Plaintiffs request that the Court certify four classes under Rule 23(b)(3). The first class (Assignment Class), which closely tracks the proposed class definition in the Amended Complaints, is defined as:

> [E]ach and every natural person named as a defendant in a lawsuit filed in any Michigan court, in which the complaint to initiate the lawsuit: (a) was filed by Van Hattum & Associates, P.C. and/or Jeffrey K. Van Hattum; (b) with information provided by Credit Bureau Collection Services, Inc.; (c) on behalf of a single, named plaintiff; (d) in connection with efforts to collect delinquent medical debts; (e) allegedly owed by the defendant to the plaintiff and one or more additional creditors named on an exhibit attached to the complaint; and (f) which falsely stated that the plaintiff had taken assignment of the claims of the additional creditors named on an exhibit attached to the complaint.

(Dkt. #71 at Page ID 749.) The three remaining classes (Misnomer Classes) concern the alleged misidentification of the provider-plaintiffs in the state-court action and vary only by the name of the misidentified provider. For example, the Spectrum Health Hospital Facility Class is defined as:

> [E]ach and every natural person named as a defendant in a lawsuit filed in any Michigan court, in which the complaint to initiate the lawsuit: (a) was filed by Van Hattum & Associates, P.C. and/or Jeffrey K. Van Hattum; (b) with information provided by Credit Bureau Collection Services, Inc.; (c) in connection with efforts to collect one or more medical debts; and (d) represented in an exhibit attached to the complaint that the defendant owed a debt to a non-existent entity named Spectrum Health Hospital Facility or to an alleged assignee of Spectrum Health Hospital Facility.

(*Id.* at Page ID 749–50.)[3]

**A.      Assignment Class**

   **1.      Ascertainability**

A court's initial focus in a class certification decision is on whether the proposed class definition is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright, et al., Federal Practice and Procedure § 1760; *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (noting that a district court must ensure that the class definition is sufficiently definite as a prerequisite to class certification). While not an express requirement of Rule 23, courts consider ascertainability of the class an implied requirement of certification. *See Stinson v. City of New York*, 282 F.R.D. 360, 373 (S.D.N.Y. 2012) ("Although not expressly stated in the Rule, courts have found an implied requirement of ascertainability to the express requirements set forth in Rule 23(a)."). Identification of class members is particularly important in Rule 23(b)(3) certifications because such

---

[3] Plaintiffs note that to properly account for the FDCPA's one-year statute of limitations and the MOC's six-year statute of limitations, class membership for all of the proposed classes would be further limited to those individuals against whom a complaint was filed during the one-year period preceding the date of filing of the complaint in Eager—the first-filed action in this Court—and the six-year period preceding the date of filing of the Eager complaint.

6

class members are entitled to notice and an opportunity to opt out of the class. *Adair v. EQT Prod. Co.*, No. 1:10-cv00037, 2013 WL 5429882, at *33 (W.D. Va. Sept. 5, 2013). "[A] successful definition is one that is 'precise, objective, and presently ascertainable . . . by reference to objective criteria.'" *Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 624 (N.D. Ala. 2013) (quoting Manual for Complex Litigation (Fourth) § 21.222 (2004)). "Unsuccessful class definitions depend on 'subjective standards . . . or terms that depend on resolution of the merits (e.g., persons who were discriminated against).'" *Id.* at 625 (quoting Manual for Complex Litigation (Fourth) § 21.222 (2004)); *see also Cuming v. S.C. Lottery Comm'n*, No. 3:05-cv-03608-MBS, 2008 WL 906705, at *1 (D. S.C. Mar. 31, 2008) ("The proposed class definition must not depend on subjective criteria or the merits of the case or require an extensive factual inquiry to determine who is a class member.") (citation omitted).

The so-called "fail safe" class is an aspect of ascertainability. A fail safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). Such classes are improper because "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). In addition, a fail safe class is unfair to the defendant because "it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012).

CBCS contends that Plaintiffs' proposed Assignment Class fails because the class members cannot be ascertained without individualized fact-finding. More specifically, CBCS argues that the proposed class will require the Court to delve into several individual determinations for each

purported class member, including whether a judgment was entered in the state-court case that would operate as a determination that the assignment allegation was true, whether there was an assignment of claims—written or otherwise—in the particular case, and whether more than one creditor was involved. Finally, CBCS contends that the Assignment Class is an improper failsafe class.[4]

Plaintiffs contend that the proposed Assignment Class is sufficiently definite to enable the Court and the parties to ascertain the identities of the class members because much of that information—judgments, assignments, and state-court complaints and exhibits—can be found in CBCS's and VHA's own records. Plaintiffs further contend that the proposed Assignment Class is not a fail safe class because the members of the class can be identified prior to a determination of liability.

Some of the issues that CBCS raises—whether judgments were entered against the putative plaintiffs in the state-court cases (which would trigger the application of res judicata and collateral estoppel pursuant to the Court's October 18, 2013 Orders) and whether more than one creditor was involved in the state-court action—pose no obstacle to identification of class members because such information can be found in Defendants' own records or can be easily ascertained from publicly-available sources. *See Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 292–93 (S.D.N.Y.

---

[4]CBCS also argues that Plaintiffs are bound by the classes set forth in their Amended Complaint and should not be allowed to expand beyond what they have alleged therein by requesting far broader classes in their motion. The Court disagrees, at least with regard to the Assignment Class definition. As one court has explained, "the class definition put forth in the complaint is often a working definition—one that will serve to identify relevant inquiries in pre-certification discovery." *Moore*, 294 F.R.D. at 627 (citing 7AA Charles Alan Wright, et al., Federal Practice and Procedure § 1785.4 at n.1). Thus, the definition "might be tweaked as the pre-certification discovery process sheds light on the contours of the potential class." *Id.* (citation omitted); *cf. Messner*, 669 F.3d at 825 ("Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."). As explained more fully, *infra*, the Misnomer classes present a different situation because Plaintiffs failed to plead *any* class definitions for such classes.

2012) ("Class members can be readily identified using this criteria through records maintained by defendants and filed in New York City Civil Court."); *Foreman v. PRA III, LLC*, No. 05 C 3372, 2007 WL 704478, at *5 (N.D. Ill. Mar. 5, 2007) ("All four of the bases upon which an individual may qualify for the proposed class can be ascertained by examining the Defendants' file on each of the potential class members for the presence of particular documents or information and other objective criteria."). For example, as to entry of some form of judgment, Plaintiffs have presented evidence that out of 1,660 total lawsuits, 1,425 ended with a judgment in favor of the provider-plaintiff. (Dkt. # 79 at Page ID 864–66.) Whether an assignment existed, however, poses a different problem. CBCS has presented evidence that written assignments existed in some cases, thus negating the possibility of a false allegation in the state-court case. (Dkt. # 76, Exs. 1-9.) If a written assignment were the only means by which a medical debt could be assigned, the existence of an assignment would pose no problem because that fact could also be determined from Defendants' records. However, an assignment may be accomplished both orally and by implication, *see Keyes v. Scharer*, 14 Mich. App. 68, 72, 165 N.W.2d 498, 501 (1968), and because Michigan law imposes no writing requirement on the type of assignments at issue in the state-court cases, nothing precludes the possibility of oral or implied assignments. Thus, in order to determine whether an individual falls within the class, the Court would be required make an individual merits-based inquiry as to whether an assignment existed. Such inquiry would likely be highly fact intensive.

Relatedly, the proposed Assignment Class is an improper fail safe class. An individual falls within the class only if the assignment allegation in the particular state-court complaint was false, i.e., no assignment existed. This is the central issue in each case and requires an individualized inquiry on the merits for each putative class member. If no assignment existed, the individual will

have a valid claim and be included in the class, but if an assignment existed, the individual will be excluded from the class and not bound by the judgment. *See Paulino v. Dollar Gen. Corp.*, No. 3:12-CV-75, 2014 WL 1875326, at *4 (N.D.W.Va May 9, 2014) (concluding that the proposed class relating to violation of the West Virginia Wage Payment and Collection Act was a fail safe class because inclusion in the class required an individualized inquiry regarding whether each former employee was "involuntarily terminated" and thus a member of the class). This ground, alone, warrants denial of certification. *Randleman*, 646 F.3d at 352. Although courts have discretion to redefine a class to avoid the fail safe problem, *see Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, No. 11-CV-4743 (ADS) (AKT), 2014 WL 724803, at *15 (E.D.N.Y. Feb. 22, 2014), the Court sees no way in which the proposed Assignment Class can be modified to avoid the fail safe problem, nor do Plaintiffs offer a viable solution. Removing the false allegation requirement would remedy the fail safe problem, but it would also render the class over-inclusive because it would include all individuals sued in state court, even if the assignment allegation were true.

### 2. Rule 23(a) Requirements

Assuming that Plaintiffs have satisfied Rule 23(a)(1)'s numerosity requirement, the proposed Assignment Class fails to meet the commonality and typicality requirements.

To satisfy the commonality requirement, Plaintiffs must show that "there are questions of law or fact common to the issue." Fed. R. Civ. P. 23(a)(2). A single factual or legal issue common to the class will suffice. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). "[P]laintiffs must show that class members have suffered the same injury." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litg.*, 722 F.3d 838, 852 (6th Cir. 2013) (citing *Dukes*, 131 S. Ct. at 2551). "'Their claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Dukes*, 131 S. Ct. at 2551). A common question satisfies this test only if it advances the litigation. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Commonality is lacking where the plaintiff's claim depends "upon facts and circumstances peculiar to that plaintiff." *Id.* at 398.

The typicality requirement under Rule 23(a)(3) simply means that "there are other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel., Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). The inquiry is "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Id.* (internal quotation marks omitted). Typicality does not exist "when a plaintiff can prove his own claim but not necessarily have proved anybody's [sic] else's claim." *Id.* (internal quotation marks omitted). The commonality and typicality inquiries "tend to merge" because they "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551 n.5.

Plaintiffs contend that whether Defendants misrepresented in the state-court complaints that the provider-plaintiffs had received assignments of claims from the other providers identified on the exhibits attached to the complaints, and whether such misrepresentations violated the FDCPA and/or

the MOC, are issues of law or fact common to all members of the Assignment Class. As noted above, however, the potential for factual variations among members of the proposed class suggests that the answers to these questions will not advance the litigation relative to the class. This is especially true with regard to the existence of an assignment. While Plaintiffs allege that, contrary to the allegation in the state-law cases, no assignment of claims existed, Defendants have shown that written assignments were in fact obtained in some cases. Moreover, the absence of a written assignment would not necessarily prove the absence of an assignment in the case of a particular class member because an oral or implied assignment might exist, necessitating a separate, fact-specific inquiry in each case. Similarly, Plaintiffs have not satisfied the typicality requirement because proof of their individual claims would not necessarily prove those of the class members.

### 3. Rule 23(b)(3) Predominance

Under Rule 23(b)(3), common questions of law or fact must predominate over questions affecting individual class members. This inquiry focuses on "common questions that can be proved through evidence common to the class." *In re Whirlpool*, 722 F.3d at 858 (citing *Amgen Inc. Conn. Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1195–96 (2013)). The need to make individualized inquiries pertaining to liability suggests that the predominance requirement is not met. *See Randleman*, 646 F.3d at 353–54.

In cases involving false statements or allegations similar to those at issue in this case, courts have found that the individual inquiries necessitated by the facts of the case predominated over issues that were common to the class. For example, in *Lee v. Javitch, Block & Rathbone, LLP*, 522 F. Supp. 2d 945 (S.D. Ohio 2007), the plaintiff alleged that the defendant violated the FDCPA by filing a false garnishment affidavit in a state-court collection proceeding. The court concluded that the plaintiff failed to demonstrate that class questions of law and fact predominated over individual issues, explaining:

> The record establishes that the particular methods used to investigate a debtor before initiating garnishment vary. To identify the individuals who may be similarly situated to Plaintiff would require a review of each [defendant law firm's] file and the information available at the time the garnishment affidavit was signed. The Court has rejected Plaintiff's contention that the form affidavit, standing alone and without regard to what particular information [the law firm] had, violates the FDCPA. The need to review the specific circumstances in each debtor's case to determine if a "reasonable basis" existed predominates over any common issues.

*Id.* at 959. Similarly, in *Foreman v. PRA III, LLC*, No. 05 C 3372, 2007 WL 704478 (N.D. Ill. Mar. 5, 2007), the plaintiff alleged that the defendants violated the FDCPA by filing false affidavits in support of state-court collection actions. The court denied class certification because it found that it would be required to make multiple individual inquiries that would predominate over issues that were common to the class and subject to generally-applicable evidence, such as what information the defendants had at the time they signed the affidavit, what information the defendants considered in executing the affidavit, and whether or not the statements in the affidavit were false or misleading in view of the unique information available with respect to each debt. *Id.* at *12–13.

Similarly, in the instant case, the Court would be require to make fact-specific inquires as to each class member to determine whether an assignment—written, oral or otherwise—existed. This issue predominates over any common issues.

**B.     Misnomer Classes**

CBCS contends that it would be unfair to certify Plaintiffs' proposed Misnomer Classes because Plaintiffs neither requested certification of such classes in their Amended Complaints nor based any claim against CBCS on the misnomer allegations. Plaintiffs respond that they sufficiently alleged that CBCS and VHA violated the FDCPA by filing court documents that falsely claimed that debts were owed to non-existent entities and misrepresented the identities of creditors to whom the alleged debts were owed. Plaintiffs' characterization of their allegations is generous, at best. For example, Plaintiffs' allegations in Whiteside concerning the use of the assumed name "Spectrum

Health Hospital Facility" concern Provider Defendant Spectrum Health Hospitals' status as a debt collector rather than a violation by CBCS or VHA. (*See, e.g.*, Case No. 1:13-CV-84, dkt. # 25, ¶¶ 11–12.) Similarly, the allegations Plaintiffs cite concerning Defendants' alleged FDCPA violations are limited to the false assignment allegations. (*Id.* ¶¶ 331–32.)

Although the instant motion is not a motion to dismiss based on the sufficiency of the pleadings, courts have recognized that even in the class action context, plaintiffs must still satisfy minimal pleading requirements dictated by Rule 23(b) and that conclusory allegations will not suffice. *See Moore*, 294 F.R.D. at 631 (noting that a class action complaint must allege, at a minimum, facts showing that the four Rule 23(a) criteria are met and that the class falls within one of the types of classes described in Rule 23(b)); *Stroud v. Seminole Tribe of Fla.*, 574 F. Supp. 1043, 1045 (S.D. Fla. 1983) ("Simply stated, the Amended Complaint does not satisfy the pleading requirements of either Rule 23(a) or (b) of the Federal Rules of Civil Procedure.") (footnote omitted). For example, in *Nieman v. Nationwide Mutual Insurance Co.*, No. 09-3304, 2010 WL 744582 (C.D. Ill. Feb. 2, 2010), the court observed:

> The pleading requirements for a class action are dictated by Federal Rule of Civil Procedure 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to put the defendant on notice of the claim against it. *Fed. R. Civ. P.* 8(a)(2). Further, the plaintiff in a would-be class action lawsuit bears the burden of alleging and proving that the proposed class satisfies the criteria laid out in Rule 23(a).

*Id.* at *1; *see also Nicholas v. CMRE Fin. Servs., Inc.*, No. 08-4857 (JLL), 2009 WL 1652275, at *4 (D.N.J. June 11, 2009) (dismissing the plaintiff's class allegations for failure to comply with Rules 8(a) and 23).

In the instant case, Plaintiffs' class allegations do not satisfy the applicable pleading standards. Plaintiffs' class allegations are limited to false assignment allegations and—especially given the absence of proposed class definitions for the Misnomer Classes—fail to notify Defendants

14

that Plaintiffs intended to seek certification of the Misnomer Classes. In spite of the ample opportunity Plaintiffs had to amend their pleadings to include allegations addressing the proposed Misnomer Classes, Plaintiffs failed to move to amend. Thus, certifying a class under these circumstances would be both improper and unfair to Defendants.

### IV. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Motions for Class Certification. An Order consistent with this Opinion will enter.


Dated: July 16, 2014                               /s/ Gordon J. Quist
                                                 GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE